IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

JAMES M. RAPER, JR.                                                                      PLAINTIFF
ADC #663449

V.                            NO. 4:21-cv-00595-JM-ERE

MARK GOBER and
SUSAN POTTS                                                                              DEFENDANTS

## RECOMMENDED DISPOSITION

**I.     Procedure for Filing Objections:**

This Recommendation has been sent to United States District Judge James M. Moody Jr. You may file objections if you disagree with the findings or conclusions set out in the Recommendation. Objections should be specific and include the factual or legal basis for the objection.

Objections must be filed within 14 days. If you do not object, you risk waiving the right to appeal questions of fact. If no objections are filed, Judge Moody can adopt this Recommendation without independently reviewing the record.

**II.    Background:**

Plaintiff James M. Raper, Jr., formerly an inmate at the Drew County Detention Center ("Detention Center"), filed this civil rights lawsuit *pro se* under 42 U.S.C. § 1983. *Doc. 1*. Mr. Raper alleges that: (1) Sheriff Mark Gober and Jail Administrator Susan Potts failed to provide him adequate medical care to treat

injuries he suffered from a brown recluse spider bite; and (2) Mr. Gober and Ms. Potts forced him to endure unconstitutional conditions of confinement.[1] *Docs. 1, 7, 12*

Pending before the Court is Defendants' motion for summary judgment, brief in support, statement of facts, and affidavits filed in support of the motion. *Docs. 104, 105, 106, 107, 108, 109*. Mr. Raper has responded to Defendants' motion and Defendants have replied to Mr. Raper's response. *Docs. 111, 112, 113*. The motion is now ripe for review.

For the reasons explained below, Defendants are entitled to summary judgment.

### III. <u>Discussion</u>:

#### A. **Summary Judgment Standard**

Summary judgment is appropriate when the record, viewed in a light most favorable to the nonmoving party, demonstrates that there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law. See FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 249-50 (1986). The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material

---

[1] The Court previously dismissed Mr. Raper's claims against the Drew County Detention Center, Robert Akin, and the Doe Defendants. *Docs. 13, 20, 55*.

fact. *Celotex*, 477 U.S. at 323. Once that has been done, the nonmoving party must come forward with specific facts demonstrating that there is a material dispute for trial. See FED. R. CIV. P. 56(c); *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011). A party is entitled to summary judgment if -- but only if -- the evidence shows that there is no genuine dispute about any fact important to the outcome of the case. See FED. R. CIV. P. 56; *Odom v. Kaizer*, 864 F.3d 920, 921 (8th Cir. 2017).

B.   Factual Background[2]

1.   Facts Related to Medical Deliberate Indifference Claim

On May 24, 2021, Mr. Raper was booked into the Detention Center. *Doc. 108 at 1*.

On May 27, 2021, Mr. Raper alleges that he was bitten by a brown recluse spider. *Doc. 109 at 27*. The following morning, Mr. Raper explained that the bite looked like "an ingrown hair or a zit that had gotten infected." *Id*. At that time, he notified Mr. Wade (not a party to this lawsuit) about the bite. *Id*. According to Mr. Raper, Mr. Wade "giggled and said, '[p]ut a tourniquet on it.'" *Id*. Later that day, Detention Center staff told Mr. Raper that they would take him to be examined by

---

[2] Unless otherwise specified, these facts are taken from: (1) the Detention Center's activity logs (*Doc. 107 at 13-16, 25-33, 40-43, Doc. 198 at 12-13*); (2) Mr. Raper's medical records (*Doc. 107 at 17-23, 34-39*); (3) Mr. Raper's intake papers (*Doc. 108 at 5*); and (4) Mr. Raper's deposition testimony (*Doc. 109*).

3

an outside provider the following Monday. *Id. at 28*. Mr. Raper believes that: (1) Ms. Potts made the decision to wait to take him to the doctor because she is responsible for transporting inmates to be examined by outside providers; and (2) Detention Center staff want to make sure that an inmate is actually in need of medical treatment, and is not "faking it," before transporting an inmate to be examined by an outside provider. *Id. at 29-30*.

Mr. Raper testified that between Saturday and Monday: (1) the spider bite began to travel up his arm; (2) his arm began to feel numb; (3) the wound grew from the size of an ingrown hair to the size of a quarter or nickel; and (4) the wound changed in color from red to black. *Id. at 32-34*.

According to the Detention Center activity logs, on May 30, 2021, Officer Watson (not a party to this lawsuit) noted a wound on Mr. Raper's left arm. *Doc. 107 at 33*. Officer Watson cleaned the wound with peroxide, then applied triple antibiotic ointment, and, later that day, provided Mr. Raper ibuprofen. *Id*.

On May 30, Detention Center staff provided Mr. Raper with three doses of ibuprofen. *Id. at 40*. On May 31, they provided Mr. Raper with two doses of ibuprofen. *Id*.

On June 1, 2021, Advanced Practice Nurse ("APN") Brenda Jacobs examined Mr. Raper at Mainline Health Systems, Inc. *Id. at 34-40*. Mr. Raper told APN Jacobs that he was suffering from a spider bite on his left arm and he had lost sensation in

4

his fingers.³ *Id. at 36*. APN Jacobs noted a wound to Mr. Raper's left, upper extremity. *Id. at 34*. She instructed Mr. Raper to: (1) clean the wound daily with peroxide; (2) rinse and apply a clean dressing; (3) keep his hand elevated; and (4) apply ice. *Id*. She also prescribed Mr. Raper 500 milligrams of Cephalexin to be taken orally every six hours for five days. *Id. at 37*. Mr. Raper testified that APN Jacobs gave him "a huge shot of antibiotics." *Doc. 109 at 37*.

As a result of the Defendants' alleged delay in providing Mr. Raper medical treatment, Mr. Raper claims that he suffers from numbness in his left arm and hand. *Id. at 38*. However, Mr. Raper has not yet been examined by a neurologist to confirm whether he has suffered any actual nerve damage. *Id. at 38-39*.

### 2.   Facts Related to Conditions of Confinement Claim

Mr. Raper alleges that from June 1, 2022, when he returned from Mainline Health Services, until June 9, 2022, the day that he was released to the Arkansas Community Corrections ("ACC"),⁴ Detention Center staff turned off the water in his cell. *Doc. 109 at 41*. As a result, he could not flush his toilet. Mr. Raper urinated and defecated in the toilet for the first three days he was without water, then he was forced to defecate on the floor. *Id. at 41, 43*. Mr. Raper believes that "Betty" (not a

---

³ Although Mr. Raper's medical records indicate that he told APN Jacobs that two brown recluse spiders bit him, she did not substantiate that claim. *Doc. 107 at 36*.

⁴ In his deposition, Mr. Raper alleges that he was forced to endure these unconstitutional conditions of confinement for two weeks. However, on June 9, 2021, Mr. Raper was transferred to the ACC. *Doc. 107 at 1, 41*.

party to this lawsuit) shut off the water to his cell as punishment after he complained about the delay in receiving medical treatment for his spider bite. *Id. at 42*. Mr. Raper testified that he continually asked Detention Center staff to turn on the water in his cell so that he could flush his toilet. *Id. at 48*. However, he also conceded that "it just seemed like they forgot about me, just flat forgot about me." *Id. at 24-25*. Mr. Raper admits that he was able to use the bathroom at a different location and Detention Center staff permitted him to use another toilet when he showered. *Id. at 41, 49*.

In addition, although Detention Center staff did not clean his cell while his water was turned off, Mr. Raper never requested that Detention Center staff clean his cell, nor did Mr. Raper request any cleaning supplies. *Id. at 57*. He also explains that Detention Center staff: (1) failed to provide him any yard time; (2) held him in his cell twenty-four hours a day; and (3) denied him the opportunity to call his wife for multiple days.[5] *Id. at 62, 67*.

During his incarceration at the Detention Center, Mr. Raper states that he spoke to Ms. Potts one time about Detention Center staff denying him the

---

[5] In his complaint, Mr. Raper alleges that the assistant jailer denied him the opportunity to call his wife. *Doc. 1 at 3*. He does not raise that claim against Mr. Gober or Ms. Potts. Furthermore, he does not allege that either of the two remaining Defendants denied him yard call or were responsible for holding him in his cell for twenty four hours a day. Accordingly, the Court will not address those claims in this Recommendation.

opportunity to call his wife. *Id. at 63-64*. However, he did not recall Mr. Gober ever walking through the Detention Center. *Id. at 64*.

As a result of his alleged unconstitutional conditions of confinement, Mr. Raper states that he suffers from PTSD. *Id. at 71*.

### C.  Qualified Immunity

Each Defendant asserts qualified immunity on Mr. Raper's claims against them and seeks summary judgment in his or her favor. Qualified immunity protects government officials from personal liability for damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person [in their positions] would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). To overcome the defense at the summary judgment stage, a plaintiff must show: "(1) the facts, viewed in the light most favorable to the plaintiff, demonstrate the deprivation of a constitutional or statutory right; and (2) the right was clearly established at the time of the deprivation." *Howard v. Kansas City Police Dep't*, 570 F.3d 984, 988 (8th Cir. 2009). In deciding the question of qualified immunity, the Court cannot treat Defendants as "one unified group" but must consider each Defendant's conduct to determine whether evidence against that "*individual officer* [is] sufficient to overcome qualified immunity." *Manning v. Cotton*, 862 F.3d 663, 668 (8th Cir. 2017) (quoting *Roberts v. City of Omaha*, 723 F.3d 966, 974 (8th Cir. 2013)).

### D. Medical Deliberate Indifference

Deliberate indifference to a prisoner's serious medical needs constitutes the unnecessary and wanton infliction of pain and violates the Constitution. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (omitting quotations and citation). Mr. Raper "must clear a substantial evidentiary threshold" to show that Defendants acted with deliberate indifference. *Johnson v. Leonard*, 929 F.3d 569, 576 (8th Cir. 2019). An inadvertent or negligent failure to provide adequate medical care does not amount to deliberate indifference.[6] *Id. at 575*. Instead, deliberate indifference requires culpability akin to criminal recklessness, which is more blameworthy than negligence but "something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer v. Brennan*, 511 U.S. 825, 835 (1994).

In addition, disagreement with treatment decisions cannot support a deliberate indifference claim. *Barr v. Pearson*, 909 F.3d 919, 921-22 (8th Cir. 2018). An inmate has no right to a particular or requested course of treatment, and a mere difference of opinion over matters of expert medical judgment or the course of treatment does not amount to a constitutional violation. *Dulany v. Carnahan*, 132

---

[6] Mr. Raper's pleadings appear to assert only federal constitutional claims and those are the only claims addressed. Accordingly, it is not necessary to assess whether either of the remaining Defendants acted negligently in violation of state law. See also 28 U.S.C. § 1367(c)(3) (district court may, once it has dismissed federal claims on which its original jurisdiction is based, decline to exercise jurisdiction over supplemental state law claims).

F.3d 1234, 1239-40 (8th Cir. 1997) (where medical records show that treatment was provided; and physician affidavits state that the care was adequate, an inmate's belief that she did not receive adequate care is insufficient to create disputed material fact).

Stated another way, Defendants can be held liable only if their actions were "so inappropriate as to evidence intentional maltreatment or a refusal to provide essential care." *Dulany*, 132 F.3d at 1240-1241 (citing *Smith v. Jenkins*, 919 F.2d 90, 93 (8th Cir. 1990)). "Merely demonstrating that a prison doctor committed medical malpractice is insufficient to establish deliberate indifference." *Jackson v. Buckman*, 756 F.3d 1060, 1065-1066 (8th Cir. 2014) (internal citation omitted).

Mr. Raper has failed to come forward with any evidence suggesting that he requested medical treatment from either Mr. Gober or Ms. Potts immediately after he suffered the spider bite on Thursday, May 27th. Although Mr. Raper testified that he believed that it was Ms. Potts' decision to wait to have him transported to be examined by an outsider provider, he fails to offer any evidence to support his belief. Moreover, although Mr. Raper's complaint alleges that he "wrote numerous written requests to the . . . sheriff [] for help," he fails to produce any evidence that Mr. Gober ever learned of his need for medical treatment. *Doc. 1 a 3*.

In addition, the Detention Center activity logs indicate that the first record of Mr. Raper's spider bite was Sunday, May 30. *Doc. 107 at 33*. At that time, the jailer on duty treated Mr. Raper's wound. *Id*. For the following two days, Detention Center

9

staff provided Mr. Raper ibuprofen. On June 1, Detention Center staff transferred Mr. Raper to Mainline Health Systems for an evaluation. At that time, APN Jacobs provided Mr. Raper an injection of Cetriaxone and prescribed Cephalexin. Furthermore, although Mr. Raper complains that he has suffered permanent injury as a result of Defendants' failure to provide him immediate medical treatment, he fails to offer any evidence to support his allegations. See *Laughlin v. Schriro*, 430 F.3d 927, 929 (8th Cir. 2005) (internal quotation omitted) (an inmate alleging that a delay in medical treatment constitutes deliberate indifference is required to "place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment"); *Corwin v. City of Independence, MO*, 829 F.3d 695 (8th Cir. 2016) (summary judgment appropriate where pretrial detainee failed to produce verifying medical evidence showing a detrimental effect due to delay in treating fractured wrist).

In his deposition, Mr. Raper testified that Defendant Gober is responsible because he is "the superior." *Doc. 109 at 68*. However, a supervisor may not be held vicariously liable under § 1983 for the constitutional violations of a subordinate. *Ashcroft*, 556 U.S. at 676 (holding that "vicarious liability is inapplicable to . . .§ 1983 suits"); *Saylor v. Nebraska*, 812 F.3d 637, 644-45 (8th Cir. 2016) (because a supervisor cannot be held vicariously liable for the constitutional violations of a subordinate, prisoner must "show that the supervisor personally participated in or

had direct responsibility for the alleged violations" or "that the supervisor actually knew of, and was deliberately indifferent to or tacitly authorized, the unconstitutional acts"). Instead, Mr. Raper must provide evidence that each defendant, "through [his or her] own individual actions, has violated the Constitution." *Ashcroft*, 556 U.S. at 676.

Based on the record before the Court, even assuming that Mr. Gober and Ms. Potts were aware of Mr. Raper's need for medical treatment beginning Sunday, May 30, no reasonable fact finder could conclude that either Defendant intentionally disregarded any serious medical need. Rather, Detention Center staff continued to monitor Mr. Raper and provide him medication. Therefore, both Mr. Gober and Ms. Potts are entitled to qualified immunity on Mr. Raper's medical deliberate indifference claims against them.

### E.   Conditions of Confinement

To succeed on an Eighth Amendment inhumane conditions of confinement claim, Mr. Raper must provide evidence that: (1) objectively, he suffered an "extreme deprivation" that was "sufficiently serious" enough to deny him "the minimal civilized measure of life's necessities," or to pose "a substantial risk of serious harm" to his health or safety; and (2) subjectively, Mr. Gober and Ms. Potts were deliberately indifferent to the risk of harm posed by the deprivation. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Thus, Mr. Raper must, at a minimum, show that

Mr. Gober and Ms. Potts were substantially aware of, but disregarded, an excessive risk to Mr. Raper's health or safety. *Revels v. Vincenz*, 382 F.3d 870, 875 (8th Cir. 2004) (citing *Farmer v. Brennan*, 511 U.S. 825, 835 (1994)).

While the Constitution "does not mandate comfortable prisons," inmates are protected from "extreme deprivations." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). However, conditions must be sufficiently serious before a court is even required to examine whether prison officials acted with deliberate indifference to an inmate's health and safety. *Wilson v. Seiter*, 501 U.S. 294, 302 (1991).

Mr. Raper complains that, on June 2, 2021, a Detention Center staff member, who is not a party to this lawsuit, turned off the water to his cell. His water remained off until June 9, 2021. From June 5 through June 9, Mr. Raper claims that he was forced to defecate on the floor. However, Mr. Raper also concedes that he was allowed to use other toilets in the Detention Center during this time. These allegations, if true, while unpleasant, are insufficient to show that Mr. Raper suffered an "extreme deprivation" necessary to support a constitutional violation. Both the Eighth Circuit Court of Appeals and courts in this district have held that conditions far worse than those alleged here passed constitutional muster. See *Goldman v. Forbus*, 17 Fed. Appx. 487, 488 (8th Cir. 2001) (unpublished opinion) (six nights sleeping on the floor and being sprinkled with urine was not a constitutional violation); *Smith v. Copeland*, 87 F.3d 265, 269 (8th Cir. 1996) (no constitutional

violation when a pretrial detainee was exposed to raw sewage for four days); *Williams v. Delo*, 49 F.3d 442, 444 (8th Cir. 1995) (four days without clothes, mattress, running water, bedding, mail, hot food, and hygienic supplies was not a constitutional violation); *White v. Nix*, 7 F.3d 120, 121 (8th Cir. 1993) (eleven days in an unsanitary cell did not amount to a constitutional violation); *Pillow v. Ryals*, No. 4:20-CV-222-DPM-JTR, 2020 WL 6445917, at *3 (E.D. Ark. Nov. 3, 2020), report and recommendation adopted, No. 4:20-CV-222-DPM, 2020 WL 7481999 (E.D. Ark. Dec. 18, 2020) ("six-day exposure to disgusting smells from an overflowing toilet, twenty-nine days without hot water in the sinks in his cell, exposure to water into his bunk from a leaking window when it rained, which required him to occasionally sleep on the floor, and a leaking sink" failed to establish a constitutional violation).

Furthermore, Mr. Raper can prevail on his claim against Mr. Gober and Ms. Potts only if he establishes that they were deliberately indifferent to a known, substantial risk of harm. Mr. Raper must prove that these Defendants acted with a "highly culpable state of mind approaching actual intent." *Kulkay v. Roy*, 847 F.3d 637, 643 (8th Cir. 2017) (quoting *Choate v. Lockhart*, 7 F.3d, 1370, 1374 (8th Cir. 1993)). This is a higher standard than negligence or even gross negligence. *Holden v. Hirner*, 663 F.3d 336, 341 (8th Cir. 2011); *Reynolds v. Dormire*, 636 F.3d 976, 979 (8th Cir. 2011).

In his deposition, Mr. Raper testified that Detention Center staff simply forgot about him. In addition, in Ms. Potts' affidavit provided in support of Defendants' motion for summary judgment, she states that Detention Center staff "temporarily" turned off Mr. Raper's water due to him throwing water out of the cell door's food tray flap. *Doc. 107 at 4*. She explains that staff provided Mr. Raper drinking water and "periodically restored [water] to the cell for hygienic purposes." *Id*. In addition, Mr. Raper concedes that: (1) Detention Center staff permitted him to periodically use another restroom; and (2) he never requested Detention Center staff to clean his cell nor did he request cleaning supplies. Furthermore, Mr. Raper fails to offer any evidence that Mr. Gober or Ms. Potts were aware of his alleged unconstitutional conditions of his confinement. He testified that he only discussed his need to contact his wife with Ms. Potts and he did not recall whether Mr. Gober ever walked through the Detention Center during his detention in May and June of 2021. On this record, no reasonable fact finder could conclude that either Mr. Gober or Ms. Potts were deliberately indifferent to any known risk to Mr. Raper's health and safety. Therefore, these Defendants also are entitled to qualified immunity on Mr. Raper's deliberate-indifference claim against them.

## IV. Conclusion:

IT IS THEREFORE RECOMMENDED THAT:

1. Defendants' motion for summary judgment (*Doc. 104*) be GRANTED and Mr. Raper's remaining federal claims be DISMISSED, with prejudice.

2. The Clerk be instructed to close this case.

Dated this 20th day of December, 2022.

_____
UNITED STATES MAGISTRATE JUDGE